UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAWANTA J. LAMBERT,<br><br>          Plaintiff,<br>v.<br><br>FRANK SOTO, et al.,<br><br>          Defendants. | Case No. 10cv1976-AJB (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS**<br><br>**[ECF No. 32]** |

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.

## PROCEDURAL BACKGROUND

On September 20, 2010, Plaintiff Jawanta J. Lambert, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights suit against Licensed Vocational Nurse Shady M. Villalobos, Correctional Officer Frank Soto, and an unidentified Medical Physician under 42 U.S.C. § 1983. ECF No. 1. Defendants Shady Villalobos and Frank Soto ("Defendants") filed a motion to dismiss the complaint on May 3, 2011 for failure to state a claim.[1] ECF No. 17. Plaintiff opposed the motion on June 30, 2011 [ECF No. 22] and Defendants filed a reply on July 14,

---

[1] Plaintiff did not name or serve the unidentified medical physician in this matter. ECF. 1 at 4 & 17-1 at 3. As such, the first motion to dismiss was only brought on behalf of the Defendants who were properly named and served. Id.

2011 [ECF No. 23]. On October 12, 2011, this Court issued a Report and Recommendation for an Order Granting Defendants' Motion to Dismiss. ECF No. 24. The Report and Recommendation was adopted by District Court Judge Anthony J. Battaglia in an Order dated March 19, 2012. ECF No. 30. In that same Order, Judge Battaglia granted Plaintiff leave to amend his complaint. Id. at 10. Plaintiff filed his First Amended Complaint on May 24, 2012 [ECF No. 31, ("FAC")] and Defendants filed a Motion to Dismiss the First Amended Complaint on June 13, 2012[2] [ECF No. 32-1, ("MTD")]. Plaintiff opposed the motion on July 30, 2012 [ECF No. 35, ("Oppo.")] and Defendants filed a reply on August 6, 2012 [ECF No. 36, ("Reply")].

This Court finds the issue appropriate for decision on the papers and without oral argument pursuant to Local Civil Rule 7.1 (d)(1). See ECF No. 33. The Court has considered Plaintiff's First Amended Complaint, Defendants' Motion to Dismiss, Plaintiff's Opposition, Defendants' Reply and all supporting documents submitted by the parties. For the reasons set forth below, this Court **RECOMMENDS** that Defendants' Motion to Dismiss ("MTD") be **GRANTED**.

### **FACTUAL BACKGROUND**

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the FAC, and must construe the FAC and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). According to the FAC, Plaintiff was involved in an "incident" at Centinela State Prison on April 21, 2009 where he was "attacked and beaten about the head and body." FAC at 3. As a result of the incident, Plaintiff alleges that he "sustained serious injuries to his back that included sharp pain during mobility and breathing; a dislocated shoulder; swelling and bruises to the head; [a]ctive bleeding, swelling, pain, and weakness to the right knee; and other minor abrasions." Id. After the incident, Plaintiff sought medical treatment from a licensed vocational nurse, Defendant Villalobos. Id. During the evaluation, Plaintiff informed Defendant Villalobos of his various injuries by "showing her the affected areas and

---

[2]The First Amended Complaint does not include the physician as a Defendant. FAC at 2. As such, the instant motion is brought on behalf of the only defendants, Frank Soto and Shady M. Villalobos. Id. & MTD.

describing his symptoms." Id. According to Plaintiff, he told Defendant Villalobos that his back hurt while breathing, that he could not place any weight onto his right leg, and that he had a dislocated left shoulder. Id. Plaintiff then alleges that despite being trained on how to document inmate-patient injuries or unusual occurrences, Defendant Villalobos falsely completed a medical report of injury form by intentionally minimizing Plaintiff's injuries to only include soreness of the back, shoulder pain, abrasions, and scratches with dried blood, leaving out "[P]laintiff's swelling, active bleeding, trouble breathing, dislocated shoulder, and damaged knee." Id. at 3-5. Plaintiff further alleges that Defendant Villalobos refused to treat his injuries and responded to Plaintiff's request for first aid by stating that "she did not care about [] [P]laintff's pain" and that "[Plaintiff] shouldn't have been fighting with staff" before walking away and not returning. Id. at 3. After Defendant Villalobos left, Plaintiff claims that he was forced to reset his dislocated shoulder himself to "lessen the pain" which he did by placing his left wrist between his thighs and pulling on his arm until his shoulder was properly set. Id. at 4. Plaintiff alleges that Defendant Villalobos was not competent to examine and treat Plaintiff, that she should have referred him to "other medical staff," and that by not referring him, Defendant Villalobos denied him medical treatment. Id. at 5. Plaintiff further alleges that due to his neglected injuries, the pain in his shoulder and knee became "intense and unbearable" and his daily activities were altered such that he could no longer climb into his bunk bed and "was reduced to sleepind [sic] on a dirty prison concrete floor." Id.

After his appointment with Defendant Villalobos, Plaintiff was escorted to a holding cell via golf cart by Correctional Officer A. Gonzales and Defendant Soto. During the ride, Plaintiff told Defendant Soto that "he suffered from serious injuries and that he was not sure if he could walk on his leg." Id. at 7. Plaintiff then directed Defendant Soto's attention to his "severely sprained and bleeding knee" to which Defendant Soto stated that "[Defendant Villalobos] should have taken care of it." Id. Plaintiff alleges that he told Defendant Soto that he was in too much pain to walk, but Defendant Soto ordered him to try with his assistance. Id. Defendant Soto then escorted Plaintiff to the holding cell as he limped "in a great deal of pain." Id. When Plaintiff again told Defendant Soto that he needed medical attention, Defendant Soto merely

stated that "the medics will take care of it dude." Id. Plaintiff was then taken to his holding cell and left to suffer "the pain of his exacerbated injuries." Id. at 8.

In May 2009, Plaintiff, complained to the medical staff about his ongoing pain from the April 21, 2009 incident. Id. at 6. In response, the medical staff referred Plaintiff to a Registered Nurse who provided him with medications and referred him to a doctor. Id. Plaintiff states he continued to suffer from pain "[a]s a direct result of [D]efendant Villalobos' attitudes and actions" and denial of medical treatment. Id. Plaintiff alleges that as a result of his untreated injuries from April 21, 2009, he sustained further injury on May 14, 2009, when he fell to the ground from his upper bunk bed. Id. According to Plaintiff, the untreated shoulder and knee injuries were "aggrevated [sic] by the daily activity of climbing to his upper bunk bed." Id. After the fall, Plaintiff was treated at a local emergency room and housed in the facility's correctional treatment center for five days on bed rest. Id. Plaintiff alleges that his "injuries were so exacerbated by [D]ef[endant's] action that his knee has never healed correctly, and neither has his back." Id. He continues to take medications for his pain and suffers from "chronic pain, shame, emotional distress, degradation, mental distressand [sic] shame." Id.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs and, therefore, violated his constitutional rights as guaranteed by the Eighth Amendment of the United States Constitution. Id. at 3 & 7. Plaintiff seeks monetary damages in the amount of $750,000. Id. at 10.

## DISCUSSION

Defendants argue that Plaintiff's FAC should be dismissed because he has failed to state a claim upon which relief can be granted. MTD at 4. Specifically, Defendants explain that Plaintiff has not alleged facts establishing that Defendants disregarded Plaintiff's serious medical needs or excessive risk of injury. Id. at 4-6. Defendants also assert that they are protected by qualified immunity. Id. at 6. Plaintiff disputes Defendants' arguments. Oppo.

**A.   LEGAL STANDARD**

Defendants move to dismiss Plaintiff's FAC under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. MTD at 4. Pursuant to Rule 8(a) of the Federal Rules

of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ..." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. See Fed. R. Civ. P. 12(b)(6). The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted. Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003). In order to survive a motion to dismiss, a Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard. Id. (quoting Twombly, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson, 295 F.3d at 895. This rule of liberal construction is "particularly important" in civil rights cases. Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. Dec. 28, 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter the Court's treatment of *pro se* filings; accordingly we continue to construe *pro se* filings liberally." This is particularly important where the Petitioner is a *pro se* prisoner litigant in a civil rights matter). When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." Easter v. CDC, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. March 9, 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266,

268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint "unless the pleading could not possibly be cured by the allegation of other facts." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal citations omitted). Moreover, "before dismissing a *pro se* complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Wayne v. Leal, 2009 WL 2406299, *3 (S.D. Cal. Aug. 4, 2009) (quoting Ferdik, 963 F.2d at 1261).

## B.    EIGHTH AMENDMENT - DELIBERATE INDIFFERENCE

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. FAC at 3-8. Specifically, Plaintiff argues that Defendant Villalobos "ignored [P]laintiff's known medical [n]eeds" and failed to act in accordance with her training, which she knew "would create an unnecessary and wanton infliction of pain" on Plaintiff. Id. at 4. Additionally, Plaintiff alleges that Defendant Soto "was aware of [P]laintiff's injuries and disregarded the excessive risk to [P]laintiff's health and safety." Id. at 8. Finally, Plaintiff alleges that as a result of Defendant Villalobos's conduct, he "has suffered/is suffering injuries in the form of chronic pain, shame, emotional distress, degradation, mental distressand [sic] shame" and that as a result of Defendant Soto's conduct, he has "endured substantial pain and emotional distress." Id. at 6 & 8. Defendants contend that Plaintiff fails to allege facts sufficient to state a claim for deliberate indifference. MTD at 4.

A prison official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's proscription against cruel and unusual punishment. See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). There is both an objective and a subjective component to an Eighth Amendment violation. Id. The objective component generally is satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Id.; Lopez v. Smith, 203 F.3d 1122, 1131-32

(9th Cir. 2000) (en banc).

The subjective component requires the prisoner to allege facts showing a culpable mental state, specifically, "deliberate indifference to a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 836 (1994). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Deliberate indifference" requires allegations of "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). The indifference must be substantial, and inadequate treatment due to malpractice, or even gross negligence, does not rise to the level of a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Tracey v. Sacramento County Sheriff, 2008 WL 154607, *2 (E.D.Cal. Jan. 15, 2008) (quoting Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988)).

"Mere delay of medical treatment, without more, is insufficient to state a claim of deliberate medical indifference." Robinson v. Catlett, 725 F. Supp.2d 1203, 1208 (S.D. Cal. July 19, 2012) (quoting Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985)). To state a claim for deliberate indifference arising from a delay in treatment, a prisoner must allege that the delay was harmful, although an allegation of substantial harm is not required. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991), overruled on other grounds by, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Factual allegations indicating that the official "sat idly by as [the prisoner] was seriously injured despite the defendant's ability to prevent the injury" or that the official "repeatedly failed to treat an inmate properly … strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs." Id. at 1060-61. "In sum, the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of

those needs, the more likely it is that a plaintiff has established "deliberate indifference" on the part of the defendant." Id. at 1061. Isolated incidents relative to a plaintiff's overall treatment suggest no deliberate indifference. Id. at 1060.

### The Objective Prong

Plaintiff satisfies the objective prong of the test for an Eighth Amendment violation. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Nawabi v. Wyatt, 2009 WL 3514849, *7 (C.D.Cal., Oct. 26, 2009) (citing Estelle, 429 U.S. 97 at 104). In considering the seriousness of an alleged medical need, courts should consider whether (1) a reasonable doctor would think that the condition is worthy of comment or treatment; (2) the condition significantly affects the prisoner's daily activities; and (3) the condition is chronic and accompanied by substantial pain. Id. (citing Doty v. County of Lassen, 37 F.3d 540 at 546 n. 3) (9th Cir. 1994).

Here, the Court must accept as true that as a result of the "incident" Plaintiff experienced swelling and bleeding, suffered serious injuries to his back, had difficulty breathing, was unable to bear any weight on his leg due to a severe knee sprain, and had a dislocated shoulder. FAC at 3. And, that because Plaintiff was denied medical treatment by Defendant Villalobos, he was forced to choose between enduring the pain from the dislocated shoulder or resetting the shoulder himself to its proper position, which he did.[3] Id. at 4. A reasonable doctor is likely to think that difficulty breathing and bearing weight on a knee along with a dislocated shoulder are worthy of comment or treatment. Additionally, Plaintiff has alleged that his daily activities were significantly affected by his injuries because he could no longer walk without pain, bend his leg, apply pressure to his leg, or climb into the bunk bed where he was supposed to sleep. Id. at 5. Finally, Plaintiff has alleged that he continues to suffer from pain in his knee and back which have not healed correctly and still require pain medication. Id. at 6. Under these facts, Plaintiff states a plausible allegation of a "serious illness or injury." Clement, 298 F.3d at 904; see also

---

[3] In making this statement, the Court does not comment on the plausibility of the scenario described in the First Amended Complaint. When adjudicating a motion to dismiss, a court is required to accept as true even "unrealistic or nonsensical" allegations. Iqbal, 129 S.Ct. at 1951. At this stage, the question is whether the facts as plead plausibly suggest a claim, rather than whether the facts themselves are plausible. Id.

1  McCoy v. Spidle, 2009 WL 3233819, *6 (E.D. Cal. Oct. 1, 2009) (finding that the medical record
2  construed in favor of the Plaintiff supported a serious medical need with respect to his dislocated
3  shoulder and denying summary judgment); Mahoney v. Schweitzer, 2010 WL 1707734, *1 (D.
4  Mont. Jan. 26, 2012)(dismissing Plaintiff's complaint while noting that "a knee injury affecting
5  Plaintiff's ability to walk maybe a serious need"); Bolter v. Jacques, 2010 WL 2228514, *3 (N.D.
6  Cal. June 1, 2010) (finding that Plaintiff stated "a cognizable deliberate indifference claim against
7  Defendants" when he alleged injuries including "red welts/both legs & waist area/ankles & wrists,
8  rash under both armpits, swollen right knee," and that "his medical condition in his right knee
9  [] deteriorated."); Manson v. Smith, 2010 WL 2736878, *8 (July 12, 2012) (stating that a
10 dislocated shoulder could be "considered a serious medical need, such that 'failure to treat [the]
11 condition could result in further significant injury or the unnecessary and wanton infliction of
12 pain,'" but finding otherwise based on lack of admissible evidence for purposes of summary
13 judgment); and Luna v. California Health Care Services, 2011 WL 6936399, *4 (E.D.Cal. Dec. 29,
14 2011) (finding that Plaintiff alleged a serious medical need to satisfy the first prong of deliberate
15 indifference where Plaintiff alleged that a fall after recent shoulder surgery caused trauma to his
16 shoulder).

## The Subjective Prong

**Defendant Villalobos**

19  Plaintiff fails to satisfy the subjective portion of the deliberate indifference test with
20 respect to Defendant Villalobos as he has not alleged that Defendant Villalobos was aware of and
21 disregarded an excessive risk to Plaintiff's health or safety.  See Farmer, 511 U.S. at 837.
22 Plaintiff fails to adequately plead facts demonstrating an actual connection or link between
23 Defendant Villalobos's action or inaction and the deprivation of his constitutional right.  FAC; see
24 also Wilson v. Woodford, 2009 WL 839921, *26 (E.D.Cal. March 30, 2009) (stating that "if there
25 is no affirmative link between a defendant's conduct and the alleged injury, there is no
26 deprivation of the plaintiff's constitutional rights") (citing Rizzo v. Goode, 423 U.S., 370 (1976)).
27 Defendant Villalobos was not involved in the original incident that injured Plaintiff.  FAC at 3.
28 Although Plaintiff does claim that Defendant Villalobos's failure to treat his injuries caused him

to fall out of his bunk bed and injure himself further, that his knee and shoulder have not healed correctly, and that he suffers from "chronic pain, shame, emotional distress, degradation, mental distressand [sic] shame," he fails to allege any facts connecting his injuries to defendant Villalobos's conduct.[4] Id. at 6; see also Smedley v. Reid, 2010 WL 391831, *11 (S.D.Cal., Jan. 27, 2010) (to survive Rule 12(b)(6) motion, complaint must directly connect defendants' actions with alleged harm) (citing Moss v. U.S. Secret Service, 572 F.3d 962, 971 (9th Cir. 2009)).

Plaintiff states that he was denied treatment by Defendant Villalobos which left him with injuries that were made worse by the "daily activity of climbing to his upper bunk bed," and eventually caused him to seize up in pain and fall from the top bunk resulting in a trip to the emergency room and five days of bed rest. Id. While these facts alone would likely be sufficient to establish a link between Defendant Villalobos's actions and Plaintiff's alleged injuries for purposes of surviving a motion to dismiss, there are other facts that must be considered. Most importantly, according to Plaintiff, he was examined by other medical personnel on May 7, 2009, just sixteen days after his appointment with Defendant Villalobos and a week *before* he fell from his top bunk. Id. at 3-6. Plaintiff acknowledges that he was examined by a nurse on May 7, 2009 for the same injures presented to Defendant Villalobos, and that the nurse provided medication and referred him to a physician. Id. at 6. Plaintiff does not allege that this treatment was constitutionally inadequate. Id.

Plaintiff has failed to allege how he was harmed by this sixteen day delay. See McGuckin, 974 F.2d at 1060 (stating that to state a claim for deliberate indifference arising from a delay in treatment, a prisoner must allege that the delay was harmful). At most, Plaintiff was forced to wait sixteen days with a sore back and shoulder, some swelling, and a *suspected* sprained knee before receiving medical treatment. See Thompson v. Shutt, 2011 WL 674049, *3-5 (Feb. 16, 2011) (finding that a twenty-two day delay between a recommendation for surgery and an appointment with the surgeon for a broken finger did not constitute deliberate indifference); see

---

[4] Plaintiff also alleges that if his dislocated shoulder was not reset correctly, it could result in "perminent [sic] muscle-skelital [sic] injury," however, Plaintiff does not allege his shoulder was reset incorrectly or that he has suffered from any muscle skeletal injury or irregularities. Id. at 5. Therefore, Plaintiff has not alleged a harm that was caused by Defendant Villalobos's alleged indifference with respect to an improperly set shoulder.

1 also <u>Smrz v. Corr. Med. Serv., Inc.</u>, 2009 WL 2591678, *5 (D. Idaho, Aug. 20, 2009) (finding that a three month delay in scheduling surgery did not establish deliberate indifference). A slight delay in the treatment of non-emergency injuries does not support a finding of deliberate indifference. <u>See</u> <u>Heilman v. Lyons</u>, 2012 WL 371600, *13 (E.D. Cal. Feb. 3, 2012) (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334-1335 (9th Cir. 1990) (affirming finding that 11–day delay in treatment for broken orthopedic pin in inmate's shoulder did not cause sufficient harm in part because "the only remedy immediately available was a prescription for painkillers." and <u>Mayfield v. Craven</u>, 433 F.2d 873, 874 (9th Cir. 1970) (per curiam) (11–day delay in treating inmate's "serious facial bone fractures" did not violate Eighth Amendment); <u>see</u> <u>also</u> <u>Esposito v. D. Khatri</u>, 2009 WL 702218, *10 (S.D. Cal. March 16, 2009) (citing <u>Sealock v. Colorado</u>, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable.").

Plaintiff's primary complaints against Defendant Villalobos and the alleged cause of his continued pain and suffering are that Defendant Villalobos did not treat his injuries, properly fill out his medical report form, or refer him to other medical staff. However, even without Defendant Villalobos's assistance, these things did occur and Plaintiff was examined and treated by a Registered Nurse who "provided him with medications and referred him to see an M.D." FAC at 6. Despite receiving the desired care that Defendant Villalobos allegedly denied, Plaintiff still fell from the top bunk of his bed and further injured himself. <u>Id.</u> Given the fact that he received appropriate medical care before falling and injuring himself, Plaintiff fails to demonstrate how he was harmed by Defendant Villalobos's alleged indifference or how her alleged failure to treat him, refer him to a doctor, or fill out the required medical forms to his specifications lead to his injuries. Plaintiff has to show an actual connection between Defendant Villalobos's actions or lack there of and his deprivation of constitutional rights and he has not done so. Additionally, after falling from the top bunk, Plaintiff was seen by medical personnel in both the emergency room and the correctional facility's treatment center. <u>Id.</u> Plaintiff fails to show that even with all of the intervening medical treatment he has received, the reason he has not healed properly and is still in pain, is due to Defendant Villalobos's deliberate indifference. At most, Defendant

Villalobos's decision not to treat Plaintiff differently or refer him to a doctor was an isolated incident in his overall treatment which included care from other medical personnel and which suggests that there was no deliberate indifference. See McGuckin, 974 F.2d at 1060 (Isolated incidents relative to a plaintiff's overall treatment suggest no deliberate indifference).

Plaintiff's next claim is that Defendant Villalobos "disregarded . . . and abandoned departmental policy and procedures" by "minimiz[ing] [] [P]laintiff's injuries to only include soreness in back, shoulder pain, abrasions and scratches with dried blood" and "deliberately witholding [sic] the physical findings of her report . . . from [P]laintiff's primary care provider." FAC at 3-5. Defendant Villalobos did not falsify Plaintiff's medical records. Although Plaintiff may not agree with Defendant Villalobos's characterization of his injuries, the description was not false. As Plaintiff alleges, he did have a sore back and shoulder, abrasions, and scratches. Id. at 3. The report did not discuss Plaintiff's sprained knee, however, Plaintiff only "suspected" that his knee was severely sprained and it is possible that Defendant Villalobos reached a different conclusion. Id. at 3. Plaintiff's opinion that he should have received additional treatment for his injuries or had them memorialized in a different manner, does not support a finding of deliberate indifference. See McMaster v. Thomas, 2010 WL 3785571, *2 (E.D. Cal. Sept. 24, 2010) (stating that a "difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs") (quoting Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)). Even if Defendant Villalobos should have recognized that Plaintiff's shoulder was dislocated or his knee was sprained, and failed to do so, inadequate treatment due to malpractice, or even gross negligence, does not rise to the level of a constitutional violation. See Estelle, 429 U.S. 97, 106. Additionally, Plaintiff's allegation that Defendant Villalobos deliberately withheld information from his primary care physician is a conclusory statement that is not sufficient to state a constitutional violation. Iqbal, --- U.S. ---, 129 S.Ct. at 1949. In sum, Plaintiff presents no facts that allow the Court to conclude that Defendant Villalobos knowingly mischaracterized Plaintiff's injuries or withheld the true extent of his injuries from his primary care provider.

Finally, Plaintiff alleges that Defendant Villalobos was not competent to treat him, but he fails to satisfy the plausibility standard and plead facts that permit the Court to draw this

inference. Id. Plaintiff's reasoning for this conclusion is that because Defendant Villalobos is a licensed vocational nurse, she "was not competent to examine, diagnose and treat [his] medical problems." FAC at 5. Plaintiff does not explain why Defendant Villalobos's status as a licensed vocational nurse left her unqualified to examine him or why she was required to refer him to another member of the medical staff. Id. "Vague and conclusory allegations" are not sufficient to withstand a motion to dismiss. Easter, 694 F.Supp.2d at 1183 (quoting Ivey, 673 F.2d at 268).

**Defendant Soto**

Plaintiff also fails to satisfy the subjective portion of the deliberate indifference test with respect to Defendant Soto. Plaintiff has not demonstrated that Defendant Soto was aware of and disregarded an excessive risk to his health or safety. Plaintiff alleges that he informed Defendant Soto that he was suffering from "serious injuries" and "was not sure if he could walk on his leg." FAC at 7. Additionally, Plaintiff alleges that he directed Defendant Soto's attention to his "sprained and bleeding knee." Id. Plaintiff does not allege that he informed Defendant Soto of his allegedly dislocated shoulder, difficulty breathing, or swelling and bruising to the head. Id. Instead, Plaintiff merely showed Defendant Soto his bloody knee, said that it was sprained, and limped a lot when Defendant Soto helped him walk to the holding cell. Id. Plaintiff's allegations do not support the conclusion that Defendant Soto knew or could or should infer that an excessive risk to Plaintiff's health or safety existed. A sore and scraped knee alone does not equate to an excessive risk, and in Plaintiff's own words, he merely "suspected" that his knee was sprained and did not receive that diagnosis from a medical professional. FAC at 3; see also John v. Berry, 469 F. Supp. 2d 922, 939 (W.D. Wash., Dec. 18, 2006) (finding no deliberate indifference where officers, who did not think Plaintiff's knee was badly hurt, made Plaintiff walk to the patrol car even though it turned out that Plaintiff's knee was fractured where the knee was grossly stable, could withstand weight bearing within a relatively short period of time, and firefighters thought that the knee was not really hurt); Bjorlin v. Crow, 2009 WL 3782584, *7 (E.D. Cal. Nov. 10, 2009) (stating that "a reasonable juror could not conclude that plaintiff's skinned knee constitutes an objective, serious medical need"); and Johnson v. Runnels,

2010 WL 3430369, *16 (E.D.Cal., Aug. 30, 2010) (stating that plaintiff submitted no evidence that cuts, abrasions, contusions, and lacerations were the types of injuries that a failure to treat could result in further significant injury or the unnecessary and wanton infliction of pain).

Furthermore, Defendant Soto is a correctional officer, not a doctor, nurse or other medical professional.  As such, he was entitled to rely on the judgment of Defendant Villalobos, a licensed vocational nurse, not to further treat Plaintiff's injuries.  It was not Defendant Soto's responsibility to provide Plaintiff with whatever additional medical care he was seeking.  See Barber v. Santa Barbara County, 2011 WL 6951838, *6 (C.D. Cal. Nov. 14, 2011) (stating that "[i]f a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands," and therefore prison officials cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor.") (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004)) (citing Daughtery v. Wilson, 2011 WL 3664799, *15 (S.D. Cal. July 1, 2011) (stating that lay officers could rely on the determinations of the nurses and doctors and had no independent duty to pursue additional treatments for plaintiff)).

Finally, Plaintiff again fails to connect Defendant Soto's action or inaction to the alleged deprivation of his Eighth Amendment rights.  See Tracey, 2008 WL 154607 at *2 (stating that plaintiff's "amended complaint must allege in specific terms how each named defendant was involved in the deprivation of plaintiff's rights" and that "there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation") (citing Rizzo, 423 U.S. at 371).  Here, Defendant Soto was not a part of the incident that initially resulted in Plaintiff's injuries and did not cause Plaintiff to fall from his top bunk. FAC at 7-8.  Plaintiff does allege that Defendant Soto was the direct cause of some of his pain in that he forced Plaintiff to walk with his assistance which "painfully exacerbated" Plaintiff's injuries.  Id. at 7.  However, this allegation is too conclusory to establish Plaintiff's claim.  Plaintiff does not  explain how walking from the golf cart to his holding cell while Defendant Soto helped him, even if painful, actually aggravated his injuries or caused him

serious harm.  At most, Plaintiff may have alleged that Defendant Soto was negligent in ordering him to walk to his holding cell while injured, however, "even gross negligence" does not rise to the level of a constitutional violation.  Estelle, 429 U.S. at 106.

For the above reasons, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim of deliberate indifference against Defendants Villalobos and Soto be **GRANTED WITH LEAVE TO AMEND**. See Moss, 572 F.3d at 972 (dismissing complaint but granting plaintiffs leave to amend in accordance with new pleading standards); see also Ramirez, 334 F.3d at 861 (court must grant a *pro se* plaintiff leave to amend his complaint "unless the pleading could not possibly be cured by the allegation of other facts") (citing Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc)).

## C. QUALIFIED IMMUNITY

Defendants argue that they "are entitled to qualified immunity because they did not violate a clearly established statutory or constitutional right when they allegedly refused to treat Plaintiff's minor pain and scratches." MTD at 6.  Plaintiff responds that Defendants are not entitled to qualified immunity because his complaint "establishes the existence of factual allegations of constitutional violations of which a reasonable person would have known." Oppo. at 11.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Anderson v. Creighton, 483 U.S. 635, 638-40 (1987). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), abrogated on other grounds by Pearson v. Callahan, 129 S. Ct. 808 (2009).  This privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. at 200-01 (quoting Mitchell, 472 U.S. at 526).  Thus, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. at 201 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

In Saucier, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity. Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. at 201. First, the court was directed to consider whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." Saucier, 533 U.S. at 201. If a constitutional right would have been violated were the allegations established, the Saucier Court instructed lower courts to next examine whether the right was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02. If an officer makes a reasonable mistake as to what the law requires - i.e. the right is not clearly established - the officer is entitled to immunity. Id. at 202-03. The Supreme Court subsequently determined that "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory." Pearson, 129 S. Ct. at 818. Instead, lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

Because there are no viable claims alleged against Defendants Villalobos and Soto, the Court is unable to evaluate whether they are entitled to qualified immunity for the alleged conduct. Unless and until Plaintiff alleges a constitutional violation, there can be no determination regarding the applicability of qualified immunity. As stated by the Supreme Court, "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity" Saucier, 533 U.S. at 201; see also Kwai Fun Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004) (recognizing that a motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record" and that while "government officials have the right ... to raise ... qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case").

Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim against Defendants Villalobos and Soto on qualified immunity grounds be **DENIED WITHOUT PREJUDICE**.

## CONCLUSION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) **GRANTING** Defendants' Motion to Dismiss for failure to state a claim.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than October 12, 2012**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than November 2, 2012**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

DATED: September 12, 2012

_Barbara L. Major_
BARBARA L. MAJOR
United States Magistrate Judge